UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TREMCO CANADA DIVISION, RPM CANADA, | : : : : | Civil Action No. 13-1641 (SRC) |
| Plaintiff, | : : | **OPINION** |
| v. | : : |  |
| DARTRONICS, INC., | : : : |  |
| Defendant. | : |  |

**CHESLER**, District Judge

   This matter comes before the Court upon the motion filed by Defendant Dartronics, Inc. ("Defendant" or "Dartronics") to dismiss the Second Count of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Tremco Canada Division, RPM Canada ("Plaintiff" or "Tremco") has opposed the motion. The Court has considered the papers filed by the parties, and for the reasons that follow, grants Defendant's motion. The New Jersey Consumer Fraud Act claim pled in the Second Count of the First Amended Complaint will be dismissed.

**I.     BACKGROUND**

   This case arises from Defendant's alleged failure to deliver to Plaintiff an inkjet printing system that complied with the parties' agreement. Tremco is a Canadian company engaged in the business of manufacturing sealant and weatherproofing products for commercial, residential and industrial use. According to the First Amended Complaint, Tremco and Dartronics entered

1

into a contract, pursuant to a purchase order dated May 5, 2011, for Dartronics to supply Tremco with a turnkey system for high-speed automated printing of high-resolution data and color images onto Tremco's caulking tubes. (Adopting the language of the First Amended Complaint, the Court will hereinafter refer to the subject of the purchase order as the "System.") At that time, Tremco remitted $174,250 to Dartronics, representing a 50% downpayment for the purchase. Plaintiff alleges that, following delays in production, the System was ultimately shipped to Tremco in or about January 2012 and tested by the parties. Plaintiff further alleges that the System "grossly failed the testing" and that, despite numerous opportunities given by Tremco to Dartronics to remedy the problems, the defects and deficiencies persisted. (First Am. Compl., ¶¶ 10-13.) Tremco alleges that it has rejected the System for failure to meet promised performance levels, has demanded the return of its downpayment and has been forced to spend money and resources to hand label its caulk tubes.

The First Amended Complaint seeks relief under two causes of action: breach of contract (First Count) and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("Consumer Fraud Act") (Second Count). This motion challenges the sufficiency of the Consumer Fraud Act claim under Rule 12(b)(6).

**II.   DISCUSSION**

   **A. Standard of Review**

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). While the Court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

### B. Consumer Fraud Act Claim

A claim under the Consumer Fraud Act entails three prima facie elements: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Ddoge, Inc., 197 N.J. 543, 557 (2009). As a claim sounding in fraud, the private cause of action created by the Consumer Fraud Act must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). F.D.I. C. v. Bathgate, 27 F.3d 850, 876 (3d Cir.1994). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As interpreted and applied by the Third Circuit, Rule 9(b) requires "plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" In re Advanta Corp.

Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)); see also Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir.2007) (holding that Rule 9(b) requires a party alleging fraud to state the circumstances of the alleged fraud "with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it] is charged.'").

Defendant argues that Plaintiff's Consumer Fraud Act claim is deficient for three reasons: (1) the transaction at issue is not subject to the Consumer Fraud Act because, as alleged, the System is a specially designed product for Tremco and therefore not "merchandise" under the statute; (2) the First Amended Complaint fails to allege that Dartronics engaged in any activity in violation of the statute; and (3) the claim fails to meet pleading standard of Rule 9(b). The Court finds that each of these arguments warrants dismissal of the Consumer Fraud Act claim.

As to the scope of transactions to which the Consumer Fraud Act applies, the Court begins with the language of the statute itself. The Consumer Fraud Act prohibits "any unconscionable commercial practice, deception, fraud, false pretense false promise, misrepresentation, or the knowing concealment, suppression, or omission, or any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale or advertisement of any merchandise . . . .*" N.J.S.A. 56:8-2 (emphasis added). The statute defines "merchandise" as "any object, wares, goods, commodities, services of anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c). The Third Circuit, acknowledging the broad but not limitless scope of the statute, noted that "New Jersey courts have repeatedly made clear [that] the CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494,

4

514 (3d Cir. 2006) (quoting Marascio v. Camapnella, 298 N.J. Super. 491 (App. Div. 1997)). Thus, for example, based on the principle that the Consumer Fraud Act covers sales to consumers in the "popular sense" and, as such, did not encompass every marketplace transaction, the Third Circuit held in Cetel that the district court correctly found the Consumer Fraud Act to be inapplicable, reasoning that benefits plans at issue were a complex product aimed at a very specific class of investor and not marketed or sold to the general public. Id. at 514-15. Likewise, in Princeton Healthcare System v. Netsmart New York, Inc., the Appellate Division of New Jersey's Superior Court reversed the lower court's denial of the defendant's motion to dismiss the Consumer Fraud Act claim, finding that the contract between the parties "for the installation and implementation of a complex software system" did not constitute the "sale of merchandise" within the meaning of the statute. Princeton Healthcare System v. Netsmart New York, Inc., 422 N.J. Super. 467, 473-74 (App. Div. 2011). The court reasoned that in contrast to a "simple purchase of computer software to the public at large," the transaction at issue provided for the "design of a custom-made program to satisfy Princeton House's unique needs and Netsmart's active participation in implementation of this program. Id. at 474.

The First Amended Complaint provides no indication that the System was a standardized product generally available to the public. To the contrary, the allegations support the reasonable inference that the System was specially designed and created for Tremco, to meet its needs in connection with printing and labeling the caulking tube products it manufactured. The First Amended Complaint alleges that Dartronics issued a proposal specific to Tremco's business operations, that the System proposed was manufactured individually for Tremco and that, after completion of the System, it was subjected to various "Factory Acceptance Tests" to ensure that

5

it performed to Tremco's specifications and satisfaction. These facts, assumed to be true, belie Tremco's assertions, made in its brief in opposition to the motion, that the product at issue is simple albeit customized printing equipment, generally available to the public at large. The allegations, in short, do not plausibly establish that the transaction at issue was for the "sale of merchandise" and, as such, do not establish that sale of the System falls within the purview of the Consumer Fraud Act. Cetel, 460 F.3d at 514-15; Princeton Healthcare Sys., 422 N.J. Super. at 473-74. The failure to plead an essential element of a claim for relief under the Consumer Fraud Act, that is, conduct in violation of the act, defeats the claim under the standard of Rule 12(b)(6).

Equally fatal to the Consumer Fraud Act claim is the lack of any factual allegation in the First Amended Complaint concerning the conduct, statements and/or omissions on which Plaintiff grounds its claim. In a conclusory manner, Tremco alleges that "Dartronics made false promises to Tremco, both orally and in writing, that it could supply to Tremco a System that would meet promised performance criteria." (First Am. Compl., ¶ 26.) At best, this allegation merely restates the basis of the breach of contract claim pled in the First Count, that is, that the Dartronics failed to perform and deliver a product as required by the parties' agreement. Merely asserting that Dartronics made "false promises" without giving any factual detail in support of that statement is not enough to state a viable Consumer Fraud Act claim. Statements which parrot the element of a claim without asserting facts to support that element do not satisfy the minimal pleading standard of Rule 8(a), much less the particularity requirements of Rule 9(b). Thus, even if the First Amended Complaint alleged facts sufficient to establish that the parties' transaction involving the System constituted the sale of merchandise, as defined by the

Consumer Fraud Act, it nevertheless fails to state a cognizable Consumer Fraud Act claim for failure to allege, with particularity, facts that, assumed to be true, would demonstrate that Dartronics engaged in conduct in violation of the statute.

### III. CONCLUSION

For the reasons discussed, the Court grants the motion to dismiss the Consumer Fraud Act claim. An appropriate order will be filed.

                                 s/ Stanley R. Chesler
                                 STANLEY R. CHESLER
                                 United States District Judge

Dated: June 4, 2013